UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUREFUNDING, LLC, a Delaware limited liability company, *Plaintiff,* v. GOODWIN PROCTER LLP, a Massachusetts limited liability partnership, *Defendant.* | Civ. A. No. 22–10478 |

## COMPLAINT AND JURY DEMAND

Plaintiff SureFunding, LLC ("SureFunding"), by and through Michael F. Flanagan, in his capacity as the court-appointed Receiver for SureFunding, hereby states and alleges the following claims for legal malpractice against Defendant Goodwin Procter LLP ("Goodwin"):

## NATURE OF THE ACTION

1.     Goodwin provided legal advice to SureFunding on its attempts to invest in short-term receivable financing for exports from India to Singapore, Hong Kong, and Dubai. Goodwin also drafted a master participation agreement to facilitate this through various intermediaries. Yet Goodwin twice failed to make SureFunding a signatory to the master participation agreement and twice arranged for SureFunding to provide millions of dollars to an intermediary without any written contract for how the money would be spent. Goodwin also failed to conduct adequate due diligence on a key intermediary

(Tradepay) or its principals, who was offering this investment that was riddled with red flags. SureFunding lost roughly $43.6 million.

2.      Goodwin owed a duty to SureFunding to use the skill, prudence, and diligence as lawyers of ordinary skill and capacity possess in exercising and performing work for SureFunding. As set forth more fully below, Goodwin's advice and legal services fell below the standard of care, causing SureFunding to transfer millions of dollars to a third-party without any written contracts dictating how the money would be spent and whether it would ever be repaid.

## THE PARTIES

3.      Plaintiff SureFunding is a Delaware limited liability company, registered to do business in Nevada, with its principal place of business at 6671 Las Vegas Boulevard South, Suite 210, Las Vegas, Nevada 89119.

4.      Defendant Goodwin is a Massachusetts limited liability partnership with its principal place of business at 100 Northern Avenue, Boston, Massachusetts 02110.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because there is diversity of citizenship between the parties and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.      The District of Massachusetts is an appropriate venue pursuant to 28 U.S.C. § 1391, as the Defendant in this action maintains its principal place of business in the Commonwealth of Massachusetts and thus resides within this District.

## FACTUAL ALLEGATIONS

### *SureFunding History*

7.      With the advice, counsel, and assistance of Goodwin, Justin Abernathy, and Jason Abernathy (together, the "Abernathys") caused SureFunding to be formed on or about March 13, 2014 for the purpose of investing their profits from other businesses.

8.      At all times relevant, Justin Abernathy, Jason Abernathy, or both of them directly or indirectly controlled SureFunding and/or were the Managers of SureFunding.

9.      At all times relevant, Goodwin had an attorney-client relationship with SureFunding, provided legal advice to SureFunding, billed SureFunding for the services it provided, and was paid by SureFunding for the services.

10.      SureFunding opened to outside investment in 2015 through the issuance of promissory notes, again with the advice, counsel, and assistance of Goodwin.

11.      Receivables factoring is a form of financing in which the financier purchases the accounts receivable of a business at a discount with the expectation of being repaid the advanced funds, plus a premium, directly from customers of the business.

12.      SureFunding was marketed to investors as a "private debt strategy" to "achieve fixed income-like returns while generating current yield."

13.      By way of an agreement prepared by Goodwin and dated January 1, 2016, SureFunding entered into an Agent Fee and Contingent Management Fee Agreement (the "Agreement") with Marketplace Capital Strategies, LLC ("MCS"), MCS US, LLC ("MCS US"), Marketplace Advisors, LLC ("MPA"), and MPA US, LLC ("MPA US").

14.      Goodwin was legal counsel to SureFunding in all aspects of the Agreement.

3

15.     At all times relevant hereto, Justin Abernathy, Jason Abernathy, or both of them directly or indirectly controlled MCS, MCS US, MPA and MPA US.

16.     On or about August 9, 2017, Goodwin formed ECP Holdings III ("ECP III") as an additional investment vehicle for SureFunding.

### *The Tradepay Relationship*

17.     One or more representatives of Tradepay Capital, LLC ("Tradepay") approached the Abernathys in or around October 2017, allegedly seeking capital for financing products that Tradepay offered to manufacturing companies in India.

18.     Goodwin, which promotes an "India practice" with vast expertise in private equity and capital markets, was legal counsel to SureFunding in all aspects of the Tradepay relationship.

19.     Tradepay purported to provide short-term financing for exports to Singapore, Hong Kong and Dubai based on the invoices of products already accepted by importers (the "Tradepay Receivables").

20.     On or about February 2, 2018, Tradepay entered into a master participation agreement with ECP III and MCS, drafted by Goodwin on behalf of SureFunding, by which ECP III would provide money to Tradepay for alleged investment in Tradepay Receivables. In this work, Goodwin failed to take into account that EPC III received this money from SureFunding. Goodwin failed to make SureFunding a party to the master participation agreement and there was no reference to SureFunding in the master participation agreement.

21.     Goodwin failed to advise that there needed to be a contract between SureFunding and ECP III that dictated how SureFunding's money would be spent and whether it would ever be repaid.

22.     Goodwin was legal counsel to SureFunding in all aspects of the master participation agreement, including negotiation and drafting, but Goodwin did not provide for SureFunding to be a signatory to the master participation agreement.

23.     The Abernathys and Goodwin did not make SureFunding a signatory to the master participation agreement, despite the fact that the real source of the funds was SureFunding.

24.     Justin Abernathy, Jason Abernathy, MCS, MCS US, MPA, MPA US, Goodwin and each of them arranged for SureFunding to provide millions of dollars to ECP III without any written contract between SureFunding and ECP III to govern the rights, obligations, and relationship between them.

25.     Goodwin should have but failed to ensure that SureFunding had the right to audit Tradepay or any other intermediary on short notice.

26.     Goodwin should have but failed to ensure that SureFunding had a security interest and the right to file financing statements on Tradepay or any other intermediary.

27.     On information and belief, Goodwin did not investigate whether Tradepay had other creditors, the identity of Tradepay's other creditors, and the amount of money Tradepay owed to the creditors.

28.     Goodwin should have but failed to conduct adequate or even any due diligence on Tradepay or its principals before SureFunding agreed to transfer funds to third-parties.

29.     The Tradepay relationship was too good to be true.  Despite investing in high-yield debt, ECP III experienced zero defaults from Tradepay Receivables for more than a year, which should have been a warning sign compelling due diligence into Tradepay and its principals.

### The Invoice Swap

30.     On or about April 23, 2019, Tradepay advised ECP III that twenty-nine (29) payments on invoices of more than $1.8 million were returned due to "processing issues" and would not be paid on a timely basis.

31.     Tradepay then proposed, and ECP III agreed, to "swap" the invoices with "processing issues" for other Tradepay Receivables with later maturity dates.

32.     Justin Abernathy, Jason Abernathy, or both of them made the decision to swap invoices without first obtaining the consent of the noteholders in the Receivership Action, or even giving them notice.

33.     The circumstances surrounding the invoice swap should have been a warning sign compelling Goodwin to perform due diligence into Tradepay and its principals.

### Expansion of the Tradepay Relationship

34.     Instead of reducing investment in the Tradepay Receivables, or waiting to see if the swapped invoices paid or experienced "processing issues," Justin Abernathy,

Jason Abernathy, or both of them chose to expand the Tradepay relationship with an amended master participation agreement dated May 2, 2019.

35.     The amended master participation agreement included more entities owned or controlled by the Abernathys, but again failed to include SureFunding as a signatory or reduce the relationship between SureFunding and ECP III to a written contract.

36.     The Goodwin attorney who negotiated and drafted the original master participation agreement passed the SureFunding file to a different Goodwin attorney to negotiate and draft an amended master participation agreement, but like his predecessor, the second Goodwin attorney also neglected to make SureFunding a signatory to the amended master participation agreement.

37.     This amended master participation agreement was drafted by Goodwin on behalf of SureFunding, by which ECP III would provide money to Tradepay for alleged investment in Tradepay Receivables. In this work, Goodwin failed to take into account that EPC III received its money from SureFunding. Goodwin failed to make SureFunding a party to the amended master participation agreement.

38.     Goodwin once again failed to advise that there needed to be a contract between SureFunding and ECP III that dictated how SureFunding's money would be spent and whether it would ever be repaid.

39.     Justin Abernathy, Jason Abernathy, MCS, MCS US, MPA, MPA US, Goodwin and each of them twice arranged for SureFunding to provide millions of dollars

to ECP III without any written contract between SureFunding and ECP III to govern the rights, obligations, and relationship between the entities.

40.     Once again, Goodwin failed to conduct any due diligence on Tradepay or its principals before executing an amended master participation agreement with Tradepay, or in the alternative, they conducted inadequate due diligence.

41.     As part of the amended master participation agreement, Justin Abernathy, Jason Abernathy, both of them, and/or entities under their ownership or control obtained a loan from Congressional Bank to fund more business with Tradepay (the "Congressional Loan"), and the Abernathys gave Congressional Bank personal guaranties on the loan (the "Congressional Guaranties").

### *Tradepay Defaults*

42.     The Tradepay Receivables began to default in July 2019 and continued to default in August 2019.

43.     Thereafter, EPC III engaged in progressively larger "swaps" of Tradepay Receivables and invested in new Tradepay Receivables.

44.     On August 23, 2019, ECP III received the last payment on a Tradepay Receivable.

45.     The Abernathys engaged a small law firm in Arkansas for assistance, which quickly discovered facts about Tradepay and its principals that would have caused any reasonable attorney to caution its client against any business with Tradepay.

46.     For example, the law firm in Arkansas discovered known criminals such as Puspesh Kumar Baid were operating Tradepay while wanted by the judicial authorities of India for financial crimes.

47.     On information and belief, the Abernathys reached the conclusion by September 2019 that Tradepay was operating a Ponzi scheme, and they were the victims of fraud.

48.     On information and belief, Goodwin realized by September 2019 the significance of the absence of a written agreement between SureFunding and ECP III, discussed with the Abernathys the possibility of writing such an agreement after the fact, and decided not to do so.

49.     As of September 2019, ECP III had completed 1,203 participations through Tradepay at an aggregate factored value of $95.4 million.

50.     On information and belief, ECP III purchased all the failed invoices after the April 2019 invoice swap.

51.     SureFunding has incurred damages in excess of $43.6 million for money provided to ECP III.

52.     On information and belief, ECP III invested more than eighty percent (80%) of the money that it received from SureFunding in Tradepay Receivables.

53.     In a frantic attempt to recoup losses, Justin Abernathy, Jason Abernathy, or both of them caused SureFunding to loan $2 million to a company called NCM Wireless on or about September 5, 2019 (the "NCM Loan"), without even verifying the legal name of the debtor.

54.     The NCM Loan also fell into default and has a current balance due in excess of $2 million.

### *Appointment of a Receiver for SureFunding*

55.     SureFunding's noteholders have filed a breach of contract action against SureFunding alleging the failure to repay more than $23 million in promissory notes. *See Brett Hatton, et al. v. SureFunding, LLC*, Case No. A-20-812651-B, Dept. 13, Eighth Judicial District Court, Clark County, Nevada (the "Receivership Action"). In the Receivership Action, the Honorable Mark R. Denton, District Court Judge ("this Court") entered an "Order Clarifying Governance of the Receivership of SureFunding, LLC" on August 6, 2020 (the "Receivership Order"), which appointed the Receiver and set forth various powers of the Receiver, including, but not limited to, asserting claims for relief in SureFunding's name. In this regard, SureFunding now asserts claims for legal malpractice against Goodwin.

56.     On or about December 4, 2020, SureFunding, through its court-appointed receiver, initiated an action in the District Court for Clark County, Nevada asserting claims against ECP Holdings III, LLC; Justin Ray Abernathy; Jason Harris Abernathy; Marketplace Capital Strategies, LLC; MCS US, LLC; Marketplace Advisors, LLC; and MPA US, LLC. *See SureFunding, LLC v. ECP Holdings III, LLC*, Case No. A-20-825862-B, Dept. 12, Eighth Judicial District Court, Clark County, Nevada.

57.     On or about January 15, 2021, SureFunding filed a First Amended Complaint adding Goodwin as a party and bringing claims against Goodwin for legal malpractice.

58.     On March 1, 2022, the claims against Goodwin were dismissed for lack of personal jurisdiction.

## COUNT ONE
### (*Legal Malpractice Against Goodwin Procter LLP*)

59.     SureFunding repeats and realleges the allegations set forth in paragraphs 1- 58 above, as though fully set forth herein.

60.     At all times relevant, Goodwin and SureFunding had an attorney-client relationship.

61.     Pursuant to the attorney-client relationship, Goodwin owed a duty to SureFunding to use the skill, prudence, and diligence as lawyers of ordinary skill and capacity possess in exercising and performing tasks which they undertake.

62.     Goodwin failed to perform and breached that duty by, among other things, twice failing to make SureFunding a signatory to the master participation agreement, twice arranging for SureFunding to provide millions of dollars to ECP III without any written contract, and failing to conduct any due diligence on Tradepay or its principals, or in the alternative, conducting inadequate due diligence.

63.     As a direct and proximate result of Goodwin's acts and omissions, SureFunding has suffered damages in an amount to be proven at trial, but in any event, well in excess of $75,000, plus prejudgment interest. All such damages were reasonably foreseeable.

64.     As a result of Goodwin's acts and omissions, SureFunding has incurred attorneys' fees and costs for the protection of its interests.

WHEREFORE, SureFunding prays for Judgment as follows:

1.      On Count One, for compensatory damages against Goodwin in an amount in an amount to be determined at trial;

2.      For an award of pre- and post-judgment interest;

3.      For an award of reasonable costs and attorneys' fees; and

4.      Any additional relief this Court deems just and proper on the evidence presented at trial.

## PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES

Respectfully submitted,

SUREFUNDING, LLC, BY AND
THROUGH MICHAEL F. FLANAGAN
IN HIS CAPACITY AS COURT-
APPOINTED RECEIVER FOR
SUREFUNDING, LLC,

By its attorneys,

Dated: March 30, 2022

/s/ Ilyas J. Rona
Ilyas J. Rona, Esq. (BBO# 642964)
Michael J. Duran, Esq. (BBO# 569234)
MILLIGAN RONA DURAN & KING LLC
50 Congress Street, Suite 600
Boston, Massachusetts 02109
Tel: (617) 395-9570
Fax: (855) 395-5525
ijr@mrdklaw.com
mjd@mrdklaw.com